# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

DAIMEON MOSLEY

VERSUS  CIVIL NO. 19-75-JWD-EWD

MIDAS WORTHINGTON, LLC

## RULING AND ORDER

This matter comes before the Court on *Defendant's Motion to Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6)* ("*Motion*") filed by Defendant, Midas Worthington, LLC ("Defendant"). (Doc. 4.) Plaintiff, Daimeon Mosely ("Plaintiff" or "Mosely") has filed a *Memorandum in Support of Opposition to Defendant's Motion to Dismiss* ("*Opposition*"). (Doc. 12.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is denied.

## FACTUAL BACKGROUND

For the purpose of ruling on the *Motion*, the Court takes the following facts alleged in the *Complaint* as true.[1] (*Complaint*, Doc. 1.)

This action arises out of Defendant's alleged violations of 42 U.S.C. §12181 *et seq*, Title III of the Americans with Disabilities Act of 1990 ("ADA"). (*See* Doc. 1.) Plaintiff is an Arizona resident with "numerous disabilities, including permanent paralysis, degenerative discs and scoliosis" which require his use of a mobility device and cause him to suffer from "sudden onsets of severe pain" and seizures. (Doc. 1 at ¶ 7.) Plaintiff acts as a "tester" "by inspecting facilities for accessibility to advance the purpose of the ADA and the civil rights of disabled individuals.

---

[1] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502-03 (5th Cir. 2014).

(Doc. 1 at ¶ 12.) Defendant is the owner and operator of Hampton Inn in Gonzales, Louisiana ("Hotel"). (Doc. 1 at ¶¶ 5.)

On August 5, 2018, Plaintiff, visited Defendant's Hotel in Gonzales, Louisiana. (Doc. 1 ¶ 20.) On this visit, Plaintiff contends that he encountered architectural barriers at the Hotel's passenger drop-off area, restroom, and lounge area, all of which denied him full and equal access and enjoyment of the services, goods, and amenities at the Hotel.

Plaintiff travels to the Baton Rouge area multiple times per year and plans to return to the Baton Rouge area in April or May. (Doc. 1 at ¶ 8.) If Defendant modifies the Hotel and its policies and practices to accommodate individuals with physical disabilities, Plaintiff would return to the Hotel in April or May as a customer. (Doc. 1 at ¶ 11.) Plaintiff is deterred from returning to the Hotel as a customer due to the barriers and discriminatory effects of Defendant's policies and procedures at the Hotel. (*Id.*) Plaintiff also returns to each facility after receiving notice of remediation of discriminatory conditions to verify compliance with the ADA. (Doc. 1 at ¶ 13.)

On February 2, 2019, Plaintiff brought this suit against Defendant, the owner and operator of the Hotel. (Doc. 1 at ¶ 5.) Plaintiff contends as a public accommodation covered by Title III of the ADA, Defendant discriminated against and continues to discriminate against Plaintiff and other individuals with disabilities by its failure to remove architectural barriers at the Hotel. (Doc. 1 at ¶ 18.) The architectural barriers identified in the *Complaint* include barriers at the Passenger Drop Off, the Restroom, and the Lounge Area. (Doc. 1 at ¶ 20.)

Plaintiff is seeking declaratory and injunctive relief, stating he intends to return to the Hotel if Defendant modifies and remediates the barriers and discriminatory effects. (*See* Doc. 1.) Plaintiff requests for a declaratory judgment under 28 U.S.C. §2201. (Doc. 1 at ¶¶14-16.)

Additionally, Plaintiff requests that this Court order Defendant to make the Hotel accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA and evaluate and modify its polices, practices, and procedures towards persons with disabilities, as well as enter an order enjoining Defendant from allowing the alleged architectural barriers to recur once they are remediated. (Doc. 1 at ¶¶ 17-27.) On April 17, 2019, Defendant subsequently filed this *Motion to Dismiss* under Rule 12(b)(1) and Rule 12(b)(6) for lack of standing. (Doc. 4.)

## APPLICABLE STANDARDS

a. *Rule 12(b)(1)*

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit explained:

> Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).
>
> The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).
>
> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).... In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

b. *Rule 12 (b)(6)*

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. at 346-47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained: The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 555 [550] U.S. at 556, 127 S. Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

More recently, in *Thompson v. City of Waco, Tex.*, 764 F.3d 500 (5th Cir. 2014), the Fifth Circuit summarized the standard for a Rule 12(b)(6) motion for dismissal:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff ... To survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff state a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502–03 (citations and internal quotations omitted).

## DISCUSSION[2]

*a. Standing requirements under the ADA*

For ADA Title III cases, a plaintiff seeking injunctive relief must satisfy the standing requirements of Article III of the Constitution. *Van Winkle v. Houcon Partners*, No. 17-01875, 2018 WL 3543908, at *3 (S.D. Tex. July 3, 2018). A plaintiff seeking injunctive relief based on an alleged past wrong "must show that there is reason to believe that he would directly benefit from the equitable relief sought." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief ... if unaccompanied by continuing, present adverse effect." *Id.* (citing *Lyons*, 461 U.S. at 102); *see also Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997).

1. Parties' arguments

Defendant argues that Plaintiff lacks standing to bring a claim under Title III of the ADA for two reasons. First, Defendant argues that Plaintiff lacks standing because he acts as a "tester plaintiff." (Doc. 4-1 at 5.) Second, Defendant contends that Plaintiff's claim should be dismissed,

---

[2] To the extent the Court does not address an argument raised by the parties, the Court does not find it persuasive.

5

because it fails to "show any 'continuing, present adverse effects'" as Defendant contends Plaintiff does not intend to return to Defendant's Hotel. (Doc. 4-1 at 6.) In support of the latter, Defendant cites to *Deutsch v. Travis County Shoe Hospital, Inc.*, 721 F. App'x 336 (5th Cir. 2018). (Doc. 41- at 3-4.) Defendant analogizes Plaintiff's complaint with that which was dismissed in *Deutsch* for the plaintiff's failure "to show he faces 'any real or immediate threat that [he] will be wronged again.'" (Doc. 4-1 at 4, citing *Deutsch v. Travis Cnty. Shoe Hosp., Inc.*, No. 15-1198, 2016 WL 5317199, at *9 (W.D. Tex. Sept. 21, 2016), *aff'd in part and remanded sub nom. Deutsch v. Travis Cty. Shoe Hosp., Inc.*, 721 F. App'x 336 (5th Cir. 2018).) Defendant contends the same is true in the present matter, arguing that Plaintiff "goes so far as to admit to being an ADA tester," and "it is therefore, apparent that [P]laintiff's sole reason for entering [the Hotel] was to identify alleged ADA violations to enable him to file the subject lawsuit." (Doc. 4-1 at 4.) Further, Defendant points to the large number of ADA claims made by the plaintiff in *Deutsch*, which have also been made by Plaintiff here. (Doc. 4-1 at 4.)

Plaintiff responds that his status as a "tester plaintiff" does not preclude him from having standing to bring this claim because "[t]ester plaintiffs have long had standing to pursue civil rights violations." (Doc. 12 at 2.) Second, Plaintiff argues that even as a "tester plaintiff," he has plead intent to return to Defendant's Hotel and is likely to return to the Hotel. (Doc. 12 at 5.) Plaintiff contends that he has the requisite standing to bring this claim because his Complaint satisfies the constitutional minimums to establish standing. (Doc. 12 at 4-5.) In making this argument, Plaintiff asserts that his Complaint demonstrates his intent to return to the Hotel by directing the Court to paragraphs 11-13 of his Complaint, which show that Plaintiff has not only plead a concrete plan to return to the Hotel but also "when he intends to return." (Doc. 12 at 5.) Last, Plaintiff argues that the Court should employ the deterrent-effect doctrine instead of the intent to return theory

6

when considering whether the Plaintiff has standing to bring a claim under the ADA. (Doc. 12 at 7-9.)

2. <u>Applicable law</u>

Federal courts are courts of limited jurisdiction, and Article III limits the purview of the Court to "cases" and "controversies." U.S. Const. art. III, § 2. As such, a plaintiff must establish that he has standing to invoke judicial resolution his claim. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.") As to the requirements to establish standing, the Supreme Court has explained that:

> . . . the irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff must clearly ... allege facts demonstrating each element.

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (internal quotations and citations omitted). Expanding on the elements to establish standing, the Supreme Court further explained that "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548. An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way." *Id.* An injury is "concrete" when it is "actually exist[s] . . . real, and not abstract." *Id.* "To obtain standing for injunctive relief, a plaintiff must show that there is reason to believe that he would directly benefit from the equitable relief sought. In other words, a plaintiff must face a threat of present or future harm."

7

*Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997) (internal citations omitted).

When considering whether a plaintiff has established standing under the ADA, courts have developed two lines of inquiry: (1) the intent to return theory; and (2) the deterrent-effect doctrine. First, the intent to return theory maintains that a Plaintiff must show that he has a specific intent to return with some specification as to the date of the return to show continuing, present adverse effects and thereby establish standing under Title III of the ADA. Applying the intent to return approach, the Fifth Circuit explained in a per curium opinion:

> Title III of the ADA limits a plaintiff to injunctive relief, and a restraining or other similar order. Standing for injunctive relief requires a threat of present or future harm to the plaintiff. Even if the plaintiff has previously encountered illegal conduct, there is no current case or controversy to support an injunction if there are no continuing, present adverse effects. Mere some day intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the actual or imminent injury.

*Deutsch v. Travis Cty. Shoe Hosp., Inc.*, 721 F. App'x 336, 340 (5th Cir. 2018) (internal quotations and citations omitted) (emphasis in original). When applying the intent to return theory, courts apply a four-factor test to determine if plaintiff has alleged intent to return. The factors are: "(1) the proximity of plaintiff's residence to the public accommodation; (2) the plaintiff's past patronage of the public accommodation; (3) the definitiveness of the plaintiff's plan to return; and (4) the frequency of plaintiff's nearby travel." *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 594 (S.D. Tex. 2014).

Second, the deterrent-effect doctrine holds that "an individual suffers an injury-in-fact sufficient to confer standing if he is deterred from visiting a public accommodation because it is not in compliance with the law; plaintiffs need not engage in the 'futile gesture' of returning to a building with known barriers that the owner does not intend to remedy." *Id.* at 583; *see Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011) ("Demonstrating an intent to

return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there."); *Disabled Americans For Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir. 2005) ("[A] disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA and who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA suffers actual or imminent harm sufficient to confer standing."). The deterrent-effect approach reasons that

> in an ADA Title III case, the risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is "able and ready" to visit the facility once it is made compliant. If the disabled plaintiff returns to the location, the same discrimination will occur until the facility is made compliant. Thus, any disabled plaintiff who alleges an intent to return can demonstrate a non-speculative injury sufficient for injunctive relief under the ADA.

*Betancourt v. Federated Dep't Stores*, 732 F. Supp. 2d 693, 709 (W.D. Tex. 2010). The Fifth Circuit seemed to recognize the deterrent-effect approach under Title II of the ADA, explaining in an en banc opinion:

> To be sure, Article III standing requires a plaintiff seeking injunctive relief to allege "actual or imminent" and not merely "conjectural or hypothetical" injury. Mere "some day" intentions to use a particular sidewalk, "without any description of concrete plans," does not support standing. But "imminence" is an "elastic concept" that is broad enough to accommodate challenges to at least some sidewalks that a disabled person has not personally encountered. For example, a plaintiff may seek injunctive relief with respect to a soon-to-be-built sidewalk, as long as the plaintiff shows a sufficiently high degree of likelihood that he will be denied the benefits of that sidewalk once it is built. Similarly, a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that an inaccessible sidewalk actually affects his activities in some concrete way.

*Frame v. City of Arlington*, 657 F.3d 215, 235–36 (5th Cir. 2011) (internal citations omitted).

9

As there is no definitive Supreme Court or Fifth Circuit case law on whether the intent to return theory or the deterrent-effect doctrine is appropriate, the Court will address whether the Plaintiff has established standing under both approaches.

3. <u>Analysis</u>

As a threshold matter, Defendant argues that Plaintiff's status as a "tester" necessitates that the Court find no standing. (Doc. 4-1 at 5.) The Court does not agree. Courts have consistently held that a plaintiff's status as a tester does not impact standing. *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 592 (S.D. Tex. 2014) ("[C]ourts have routinely found that "testers" or serial plaintiffs have standing in Title III accessibility cases.") In a case similar to the one at hand, the Southern District of Texas explained the role of tester plaintiffs under the ADA, stating:

> This case is one of many controversial putative class actions proliferating around the country brought often without notice by disabled individuals, who, frequently along with an organization dedicated to the rights of the disabled, are "serial plaintiffs" or "testers" acting as private attorneys general challenging various entities' noncompliance in their places of public accommodation with Title III of the ADA, leading to a wide and varied spectrum of judicial decisions addressing complex issues of, and policies regarding, standing. Because the statute does not authorize an award of damages to a prevailing plaintiff, but only equitable relief and an award of attorneys' fees, concerns about abusive litigation by plaintiffs' lawyers must be balanced against widespread noncompliance with the ADA and inadequate enforcement of the civil rights of individuals with disabilities.

*Gilkerson v. Chasewood Bank*, 1 F. Supp. at 573-575 (internal citations omitted).

Turning to the question of standing, the Court will first look at the intent to return theory and analyze the Plaintiff's claim under the factors to determine if the Plaintiff has established standing, namely "(1) the proximity of plaintiff's residence to the public accommodation; (2) the plaintiff's past patronage of the public accommodation; (3) the definitiveness of the plaintiff's plan to return; and (4) the frequency of plaintiff's nearby travel." *Gilkerson* 1 F. Supp. 3d at 594.

10

First, Plaintiff resides in Arizona, which is a significant distance from Gonzales, Louisiana. (Doc. 1 at ¶ 3.) Second, there are no allegations that Plaintiff visited the Hotel prior to the visit that led to the instant suit. The first two factors therefore weigh against finding an intent to return. Third, the *Complaint* alleges that Plaintiff intends to return to the Hotel as a customer in April or May if accommodations are made. (Doc. 1 at ¶ 11.) The *Complaint* likewise alleges that Plaintiff would return to ensure that the accommodations are compliant with the ADA. (*Id.* at ¶ 13.) Defendant points out that the Plaintiff has no reservation for April or May and therefore argues that no intent to return exists. (Doc. 4-1 at 5.) However, making a reservation at a hotel that is not compliant with the ADA seems to the Court to be a "futile gesture" that a plaintiff does not need to take to establish standing. Furthermore, the failure to make a reservation this far in advance of the return visit does not necessarily indicate that Plaintiff does not intend to return. This factor weighs in favor finding an intent to return. Last, the *Complaint* alleges that the Plaintiff frequently travels to the Baton Rouge area on business. (Doc. 1 at ¶ 8.) This factor weighs in favor of finding an intent to return. Therefore, two factors weigh against finding intent to return, two factors weigh in favor of finding an intent to return.

Although the factors are on balance, taking everything alleged in the *Complaint* as true and making all reasonable inferences in favor of Plaintiff, the Court finds that the *Complaint* alleges sufficient facts to support a finding of intent to return. In making this determination the Court puts specific weight on the fact that Plaintiff has specifically alleged a time in which he would return to the Hotel—in April or May—and that he would return as a customer. Therefore, Plaintiff has standing to bring a claim under Title III of the ADA under the intent to return theory.

Under the deterrent effect doctrine, Plaintiff likewise has alleged sufficient facts to have standing to bring the claim. Plaintiff alleges that he is deterred from returning to the Hotel because of the architectural barriers. (Doc. 1 at ¶ 11.) Under the deterrent-effect doctrine the continuing presence of architectural barriers creates an immediate present harm to the Plaintiff, because if the Plaintiff were to return to the Hotel he would face the same discriminatory barriers. As such, the allegations in the *Complaint* are sufficient to establish standing under the ADA. Under both theories the Plaintiff has alleged sufficient facts to establish standing to bring a claim under Title III of the ADA, the *Motion* is therefore denied as to the claims under Federal Rule of Civil Procedure 12(b)(1).

b. *Prima facie claim under the ADA*

   1. Parties' arguments

Under Rule 12(b)(6), Defendant moves to dismiss Plaintiff's claim because it does not allege sufficient facts to show that Plaintiff has intent to return to the Hotel. (Doc. Doc. 4-1 at 4.) Defendant argues various facts that are "noticeably absent from" the *Complaint*. (Doc. 4-1 at 1.) Defendant asserts the *Complaint* alleges no factual allegations that show his intent to return to the Hotel outside of litigious pursuit by pointing to Plaintiff's failure to plead: (1) that Plaintiff had a reservation to stay at the Hotel for his August 2018 visit, (2) that Plaintiff had intent to stay at the Hotel during his August 2018 visit, (3) that Plaintiff was a paying customer, (4) that Plaintiff stayed at any Hotel during his August 2018 visit, (5) Plaintiff's reasoning for visiting the Hotel and, (6) that Plaintiff has any concrete travel plans to return. (Doc. 4-1 at 1, 4-5.)

In response, Plaintiff argues that he has plead a prima facie ADA claim. (Doc. 12 at 2.) Plaintiff contends his *Complaint* is sufficient because it pleads: (1) Plaintiff has a qualified disability, (2) the specific architectural barriers that Plaintiff encountered at the Hotel, and (3) Plaintiff intends to return to the Hotel if the architectural barriers are removed. (Doc. 12 at 4-5.)

Plaintiff argues these factual allegations alone are enough to defeat Defendant's *Motion*. Further, Plaintiff contends in order to survive Defendant's *Motion*, the *Complaint* need not include a reservation to stay at the Hotel during his August 2018 visit, an intent to stay at the Hotel during his August 2018 visit, the reasoning for visiting the Hotel, or a detailed, concrete plan for returning to the Hotel. (Doc. 12 at 5.) Rather, Plaintiff argues it is sufficient to show that "he is likely to return and a concrete plan to do so and when." (Doc. 12 at 5.) Plaintiff argues the *Complaint* meets this standard, and Defendant's *Motion* should be denied as a matter of law. (Doc. 12 at 4.)

2. Analysis

To state a claim under Title III of the ADA a plaintiff must show: (1) that he is disabled as defined by the ADA, 42 U.S.C. § 12102(2); (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) that the defendant discriminated against the plaintiff because of the plaintiff's disability. 42 U.S.C. § 12182(a); *Smith v. Bastrop Med. Clinic, P.A., Inc.*, No. 11-330, 2011 WL 3844223, at *4 (W.D. Tex. Aug. 29, 2011), *subsequently aff'd sub nom. Smith v. Bastrop Med. Clinic, P.A.*, 465 F. App'x 389 (5th Cir. 2012). "To prevail discrimination based on the presence of architectural barriers, a plaintiff must also prove: (1) the existing facility presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." *Kramer v. Lakehills S., LP*, No. 13-59, 2014 WL 51153, at *6 (W.D. Tex. Jan. 7, 2014).

To the extent that the Defendant argues that the *Complaint* fails to state a claim under Title III of the ADA, the Court does not agree. The *Complaint* alleges specific facts to each of the elements of the prima facie claim. Therefore, the *Motion* is denied to the extent that it asks the Court to dismiss the *Complaint* under Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

IT IS ORDERED that Defendant's *Motion* is DENIED.

Signed in Baton Rouge, Louisiana, on January 9, 2020.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**